Case 2:18-cv-00424 Document 54 Filed on 09/08/20 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
September 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| CLAUDE HOOKER, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:18-CV-424 |
| § | |
| UNITED PROPERTY & CASUALTY § | |
| INSURANCE COMPANY, § | |
| § | |
| Defendant. § | |

## ORDER ON SUMMARY JUDGMENT MOTIONS

Plaintiff Claude Hooker sues United Property & Casualty Insurance Company (UPC) for windstorm insurance policy benefits for Hurricane Harvey damage to his home. He asserts claims for breach of contract, violation of the prompt pay act, and bad faith insurance practices. D.E. 1-1. Before the Court is UPC's motion for summary judgment, claiming that UPC has already paid for all damage within the policy's coverage. UPC seeks to defeat the breach of contract claim, which then causes the remaining claims to fail.[1] D.E. 33. Hooker has responded, UPC has replied, and Hooker filed a sur-reply. D.E. 44, 46, 52. For the reasons set out below, the motion (D.E. 33) is DENIED.

Also before the Court is Hooker's "Motion for Partial Summary Judgment on Certain Affirmative Defenses" (D.E. 34). Hooker seeks to eliminate UPC's defenses related to covered losses, conditions precedent, third-party causation, and failure to mitigate damages. UPC responded and Hooker replied. D.E. 43, 47. For the reasons set out below, the motion (D.E. 34) is GRANTED IN PART and DENIED IN PART.

---

[1] Later clarification confirms that UPC's motion for summary judgment is directed only to the claims for structural damage to the residence. Plaintiff's claim for personal property damages are unaffected. Thus the motion is more appropriately one for a partial summary judgment.

## DISCUSSION

### A. UPC's Motion

#### 1. Policy Production and Evidence

UPC seeks summary judgment dismissing Hooker's breach of contract claim. However, UPC did not timely produce a true and correct, complete copy of Hooker's insurance policy (the 08/14 form) in the ordinary course of discovery. And the policy form attached to its motion is a revised form (09/16) that does not apply to Hooker's coverage. D.E. 33-1. Hooker objected to any summary judgment based on the incorrect form. D.E. 44, p. 2. Thereafter, UPC filed the correct policy form with its reply. D.E. 46-2, pp. 18-38.

Ordinarily, the Court does not consider new evidence filed with a summary judgment reply. However, that new evidence may be considered if the Court extended to the non-movant an opportunity to address it. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004). The Court has done so by permitting Hooker to file his sur-reply. Because Hooker has not identified a material difference in the policy language as it applies to the issues and arguments first placed before the Court in the motion,[2] the Court proceeds to adjudicate the motion on the merits using only the language of the 08/14 policy form, disregarding the 09/16 form.

#### 2. Concurrent Cause

UPC's motion is based on the concurrent cause doctrine. *See generally*, *Wallis v. United Servs. Auto. Ass'n*, 2 S.W.3d 300, 302-03 (Tex. App.—San Antonio 1999, pet. denied) (citing *Travelers Indem. Co. v. McKillip*, 469 S.W.2d 160, 162 (Tex. 1971)).

> The doctrine of concurrent causes limits an insured's recovery to the amount of damage caused *solely* by the covered peril. Because an insured can recover only for covered events, the burden of segregating the damage attributable *solely* to the covered event is a coverage issue for which the insured carries the burden of proof.

---

[2] Hooker's sur-reply, D.E. 52, p. 2 n.1.

*Wallis*, 2 S.W.3d at 303 (emphasis added); *see also, Seahawk Liquidating Tr. v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 990, 995 & n.14 (5th Cir. 2016).[3]

According to UPC and its expert, Hooker's claim for structural damage to his home involves damage caused by ordinary wear and tear or construction defects. It argues that, because such damage is not covered under the policy, Hooker is not entitled to a jury trial unless—consistent with the concurrent cause doctrine—he submits evidence allocating the damage between the covered and uncovered causes.

While denying that there were any wear and tear issues or construction defects involved in the property damage suffered, Hooker first complains that UPC has not demonstrated that those causes are excluded from the policy's coverage. UPC responded that Hooker just does not understand how insurance policies work. D.E. 43, p. 12. While UPC failed to articulate the insurance principles behind its argument, those principles are important to understanding how the concurrent cause doctrine applies here.

According to the policy, "[UPC] cover[s] direct physical loss to the covered property caused by windstorm or hail unless the loss is excluded in the Exclusions." D.E. 46-2, p. 25. UPC's windstorm and hail policy is thus a named-perils policy. *See generally, Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 273 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). This is to be distinguished from an all-risks policy.[4] "Under such a named-perils policy, 'all perils not specifically included in the policy are excluded from coverage.'" *Id*. (quoting *de Laurentis v. United Servs. Auto. Ass'n*, 162 S.W.3d 714, 722 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).

---

[3] The *Seahawk* opinion notes that the doctrine applies only to concurrent causes, not independent causes. *Id.* at 995. There is no suggestion in this case that the causes at issue are independent.

[4] "The standard property policy covers losses caused by specified perils; to the extent not specified, no coverage results. . . . Policies may be written on an all-risk basis which provides coverage for direct losses which are not otherwise excluded." 10A Couch on Ins. § 148:48.

According to UPC's interrogatory responses,

> the Policy does not cover wear and tear, marring, deterioration, mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself; or faulty, inadequate or defective design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; or maintenance; . . . which must be repaired or replaced because of sudden and accidental direct physical damage resulting from wind or hail which would otherwise be covered under this policy.

D.E. 46-3, p. 7. This is not policy language and UPC has not indicated how it collected this list of uncovered causes.[5] However, what is important to the pending motions is that each represents a causal agent for property damage that is not a windstorm or hail. Therefore, wear and tear and construction defects are not covered perils. Under this named-perils policy, the fact that wear and tear and construction defects are not expressly listed in the policy exclusions is irrelevant.[6]

Hooker can take no comfort in the proposition that Hurricane Harvey was a dominant, proximate, contributing, or "but for" cause of all of the damage. Under the concurrent cause doctrine, he can recover only for that part of the damage "solely" caused by windstorm. *Wallis*, 2 S.W.3d at 303. Because UPC has invoked the uncovered perils of wear and tear and construction defects, it is Hooker's burden under the concurrent cause doctrine to provide evidence regarding how the damages should be allocated. He is only entitled to recover damages "solely" caused by the windstorm.

### 3. Evidence of Windstorm Damage

Hooker has testified, supported by his expert, that the structural beams were intact and

---

[5] For this proposition in its interrogatory response, UPC references 2,547 pages of documents that it produced to Plaintiffs and that are not of record. D.E. 46-3, p. 7. In its response to Hooker's motion, UPC cites to its own answer and claim-denial letter. D.E. 43, p. 11 nn.47-49 (citing D.E. 16 and 34-3).

[6] Hooker points out the conundrum presented by the way the perils are named. D.E. 47, p. 4. He argues that the language "unless the loss is excluded in the Exclusions" creates two categories: covered and excluded. Hooker argues that the policy does not make sense from a plain language point of view if there is some other category of "uncovered" losses as opposed to "excluded" losses. However, the Court need not resolve this issue because the law is clear regarding the treatment of named-perils policies and the named exclusions are not relevant here.

properly joined before the hurricane and that splitting of the wood, broken straps, and joints-out-of-placement appeared only after the hurricane. His testimony was based on his personal observations as a daily occupant of the home. D.E. 44-6, p. 4. Engineer Stuart Lynn declared that, at the time of his inspection soon after the storm, it was clear that the damage to the wood was new, as it was not weathered as one would expect with ordinary aging and wear and tear. He stated that he did not observe any construction defects. And he further asserted that the damage was consistent with the wind forces of Hurricane Harvey and the surrounding property damage. He considered whether there were other weather events during the life of the house that predated the hurricane and might have caused the damage and found none. D.E. 44-1.

While UPC has complained that this evidence is conclusory, the Court has reviewed the deposition testimony and expert declaration and finds that the evidence provides sufficient basis for the representations to qualify as admissible summary judgment evidence. *See* Fed. R. Evid. 702, 703; *Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, 3:18-CV-0434-K, 2019 WL 3716427, at *1 (N.D. Tex. Aug. 6, 2019) ("lay-witness testimony about the condition of property prior to an alleged covered loss can create a genuine dispute of material fact on an issue of concurrent causation"). Any complaints go to the weight, not the admissibility, of the opinions. *State Farm Fire & Cas. Co. v. Rodriguez*, 88 S.W.3d 313, 320 (Tex. App.—San Antonio 2002, pet. denied) (addressing expert testimony), *abrogated on other grounds by Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20 (Tex. 2008) (eliminating discovery rule for limitations purposes).

### 4. Evidence of Allocation

It is Hooker's burden to show that his claim results from a covered peril. He has done that. But UPC has provided competent summary judgment evidence to support its claim that the

damages were caused by non-covered perils. In such a scenario of competing causes, Hooker bears the burden to support his claim with evidence that allocates damages arising from his covered claim from any damages that arise from a non-covered cause. *Wallis*, 2 S.W.3d at 303.

"Under Texas law, allocation is an issue of fact, unless the insured fails to present any evidence regarding allocation." *Companion Prop. & Cas. Ins. Co. v. Opheim*, 92 F. Supp. 3d 539, 548 (N.D. Tex. 2015). Whether Hooker has satisfied his allocation burden depends on whether he is entitled to "allocate" zero percent of the damages to the non-covered causes and 100% to Hurricane Harvey. He can.

The percentage spectrum includes taking the position, based on admissible evidence, that the covered peril caused 100% of the loss claimed. *See generally, Southland Lloyds Ins. Co. v. Cantu,* 399 S.W.3d 558, 576 (Tex. App.—San Antonio 2011, pet. denied); *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 3:16-CV-0465-B, 2017 WL 3115142, at *9, 11 (N.D. Tex. July 21, 2017) (finding claimant's evidence failed to establish that the covered peril was the *sole* cause *or* an allocated portion of the causes), *aff'd*, 892 F.3d 167 (5th Cir. 2018).

"[The expert witness] was not required to assign precise percentages to potential contributing causes that he did not believe were even relevant in this case. . . . [His] inability to apportion damage among seven possible contributing causes goes to the weight of his testimony, not its admissibility." *Rodriguez*, 88 S.W.3d at 320.

If the jury finds that a non-covered peril caused some of the loss, its allocation of causation must be supported by evidence. However, we need not anticipate that scenario at the summary judgment stage. Hooker has offered evidence that both disputes UPC's evidence of non-covered causes and supports his argument that the hurricane was the sole cause. *Lowen Valley*, 892 F.3d at 172 (requiring summary judgment evidence to create a disputed issue). It is

not Hooker's burden to establish conclusively that the non-covered perils caused 0% of the loss. It is enough that he raises a disputed issue of material fact in support of his 100% allocation. Fed. R. Civ. P. 56(a), (c)(1). *Opheim*, 92 F. Supp. 3d at 547 (citing *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999)). Competent summary judgment evidence claiming that the loss was caused in its entirety by a covered peril is sufficient to take the allocation issue to the jury. *See generally, Nasti v. State Farm Lloyds*, 4:13-CV-1413, 2015 WL 150468, at *4 (S.D. Tex. Jan. 9, 2015) (collecting cases).

### 5. Summary

Because Hooker has offered some evidence that 100% of the damages he seeks constitute direct physical loss to the covered property caused by windstorm, UPC has not demonstrated that it is entitled to summary judgment defeating the breach of contract claim. Because the remaining arguments in UPC's motion are premised on defeating the breach of contract claim, the Court does not reach them. The motion (D.E. 33) is DENIED.

## B. Hooker's Motion: Eliminating Defenses

Like the briefing associated with UPC's motion for summary judgment, the parties spend a great deal of time briefing complaints regarding discovery compliance. But these motions are not motions to compel or for sanctions; they are for summary judgment. The Court thus disregards any discovery dispute unless it is directly applicable to the summary judgment relief requested.

### 1. Uncovered Perils

Hooker's motion seeks to narrow the defenses asserted in UPC's answer. Whether they are addressed as defenses or affirmative defenses, Hooker is entitled to summary judgment if he has adequately challenged them and UPC has not adequately responded. *See* Fed. R. Civ. P.

56(a) (allowing summary judgment on a "claim or defense" or "part of each claim or defense," not limited to affirmative defenses). As the Supreme Court has written, "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

UPC claims that Hooker has not set out the elements of the defense so as to challenge each specific element. However, most of these defenses are not like causes of action with multiple elements. They are simply single-concept defenses to Hooker's element of a covered peril in his breach of contract claim addressed to his windstorm policy. Hooker challenges UPC's laundry list of uncovered perils, each of which is pled in its answer (D.E. 16) as a defense to Hooker's claim:

- Wear and Tear;
- Marring;
- Mechanical Breakdown;
- Latent Defect;
- Inherent Vice or Quality in Property that Causes it to Damage or Destroy Itself; and
- Faulty, Inadequate, or Defective Design Specifications, Workmanship, Repair, Construction, Renovation, Remodeling, Grading, Compaction, or Maintenance.

D.E. 34, pp. 5-6, 10-12.

As to each of these defenses, Hooker first complains that they are not policy exclusions that can eliminate coverage. As stated above with respect to UPC's motion, these are not matters of exclusion, but illustrations of uncovered perils when adjudicating a named-perils policy. For that reason, the Court rejects Hooker's argument that they are not causal factors that can defeat coverage because they are not "exclusions."

The second issue Hooker presents is whether UPC has sufficient evidence to raise a disputed issue of material fact as to each. "[T]he nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (citing *Ferguson v. Nat'l Broad. Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978)).

UPC did not attach such evidence to its response to Hooker's motion. However, under Rule 56, the Court may consider materials in the record, whether or not they are cited. Rule 56(c)(3); *Mun. Bond Reporting*, 672 F.2d at 440. The Court considers UPC's evidence submitted with its motion. The report of Scott Burns (D.E. 46-1) recounts his expert investigation and conclusions. He identifies instances of aging, exposure to a coastal environment, and naturally-occurring splits and twists in pilings. This evidence goes to wear and tear and marring. Burns also notes construction defects with regard to how the structure was nailed together, which could also go to workmanship. Those are the issues UPC identified in its letter of February 13, 2018, as the basis for denying the claim for structural beams and those may remain in the case. D.E. 34-3, p.3. No other complaints appear of record.

Therefore, the Court GRANTS summary judgment in favor of Hooker with respect to the following defenses:

- Mechanical Breakdown;
- Latent Defect;
- Inherent Vice or Quality in Property that Causes it to Damage or Destroy Itself; and
- Faulty, Inadequate, or Defective Design Specifications, Repair, Renovation, Remodeling, Grading, Compaction, or Maintenance.

Those defenses are eliminated for lack of evidence.

### 2. Conditions Precedent: Hooker's Duties After Loss

In response to Hooker's pleading that all conditions precedent have been fully performed or waived, UPC pled that this was a conclusion of law to which no pleading was required or, alternatively, that it was denied. D.E. 16, p. 4. Hooker argues that this does not satisfy UPC's pleading obligations, citing *Lidawi v. Progressive County Mutual Insurance Co.*, 112 S.W.3d 725, 729 n.1 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (an insurance company is required to plead specifically to controvert a plaintiff's pleading that all conditions precedent have been satisfied). Hooker is correct. *Cmty. Bank & Tr., S.S.B. v. Fleck*, 107 S.W.3d 541, 542 (Tex. 2002). While the *Fleck* case relied on a state rule of pleading,[7] the requirement of specific defensive pleading in response to a plaintiff's pleading that all conditions precedent have been performed, as stated in *Lidawi*, has also been applied in federal court. *Note Inv. Group, Inc. v. Assoc. First Capital Corp.*, 83 F. Supp. 3d 707, 729 (E.D. Tex. 2015); *see also* Fed. R. Civ. P. 8(b)(2) (requiring defendant to fairly respond to the substance of the allegation), 12(b) (requiring every defense to a claim for relief to be pled).

UPC's initial general denial was not sufficient to raise any issue of failure to perform a condition precedent. But then UPC separately pled that the lawsuit is premature because conditions precedent had not been satisfied, setting out a compendium of policy provisions having to do with duties after loss, other insurance, and legal action. D.E. 16, pp. 7-8. Hooker argues that this still does not satisfy the pleading requirement because it is not sufficiently specific. *Bencon Mgmt. & Gen. Contracting, Inc. v. Boyer, Inc.*, 178 S.W.3d 198, 204 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The inclusion of multiple policy requirements in the answer conflicts with UPC's response to an interrogatory. When asked the basis for this defense

---

[7] "In pleading the performance or occurrence of conditions precedent, it shall be sufficient to aver generally that all conditions precedent have been performed or have occurred. When such performances or occurrences have been so plead, the party so pleading same shall be required to prove only such of them as are specifically denied by the opposite party." Tex. R. Civ. P. 54.

in an interrogatory, UPC responded more narrowly, claiming that Hooker "did not and has not provided UPC with documents or materials evidencing specific repairs that have been made to the property, despite requests for same." D.E. 34, p. 13.

Hooker complains that UPC's complaint does not correlate to any policy precondition. He further explains that he does not know what UPC is referring to. Therefore, he seeks summary judgment on the basis of no policy provision and no evidence.

In its summary judgment response, rather than identify the policy provision at issue or the unmet request for documents or materials that required UPC's denial of Hooker's claim for policy benefits, UPC calls Hooker's issue a farce and a waste of the Court's time. D.E. 43, p. 13. UPC then spends multiple pages complaining of Hooker's alleged failure to respond adequately to discovery requests—a matter not before the Court. UPC circles back to reference all of the policy provisions quoted in its non-specific answer. Only after that does UPC reference a February 13, 2018 claim settlement letter in which it requested additional information. D.E. 43, p. 16 (referring to D.E. 34-3).

The claim settlement letter lists two instances in which additional information is required:

1. "You must provide us with information we request under Condition 4.b.(1)." D.E. 34-3, p. 4 (quoting from the policy, which lists as part of UPC's duties the requirement to "Request all items, statements, and forms that we reasonably believe will be required. We may request more information if during the investigation of the claim such additional information is necessary." D.E. 46-2, p. 27).
2. "In order to receive payment of your Recoverable Depreciation, you will need to provide the following items . . . ." D.E. 34-3, p. 5.

UPC has not identified any information that it had requested under the first requirement and did not receive.

The second requirement did not appear in UPC's answer and was thus waived. *State Farm Lloyds v. Hanson*, 500 S.W.3d 84, 96 (Tex. App.—Houston [14th Dist.] 2016, pet.

denied). Moreover, as Hooker points out, his claim is for failing to pay for structural damage and damage to Persian rugs. While he complains that the claim has been improperly denied or underpaid, there is no reference in his complaint to a dispute regarding recoverable depreciation. D.E. 15.

UPC's answer does not properly plead Hooker's failure to perform any condition precedent to payment for his alleged claim. Hooker also challenges this condition-precedent defense on the basis of a lack of evidence. UPC has supplied no evidence in support of this defense. However, while the burden of pleading is shifted to the insurance company, the burden of proof is not. *Lidawi*, 112 S.W.3d at 729 n.1 (citing *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). Therefore, the Court GRANTS summary judgment, only on the basis of the failure to properly plead Hooker's failure to perform a condition precedent.

### 3. Third Party Causation

UPC has pled that "If Plaintiff suffered any damage, as alleged, such damage was caused in whole or in part by the action or inaction of third parties for which United Property is not responsible." D.E. 16, p. 9. Hooker challenges this defense because the policy does not exclude third-party actions. As discussed, as a named-peril policy, the policy need not specifically exclude third-party causation. Hooker's first challenge is rejected.

Hooker also challenges this defense on the basis of no evidence that any third party caused his damages. UPC's response is limited and fails to identify any third-party action that could have caused Hooker's damages. UPC does not submit any summary judgment evidence of third-party causation. Consequently, the Court GRANTS the summary judgment motion with respect to UPC's defense of third-party causation.

### 4. Failure to Mitigate

UPC pled that Hooker failed to take reasonable steps to mitigate his damages. D.E. 16, p. 9. In an interrogatory response, UPC elaborated only so far as to say that Hooker "failed to segregate and retain[] damaged items for which a claim is made." Hooker challenges this defense on the basis of no evidence. D.E. 34, p. 14. UPC responds that Hooker admitted in his deposition that he disposed of the rugs for which he is trying to recover damages. D.E. 43, p. 17; 43-6, pp. 6-7. The Court therefore DENIES the summary judgment motion on this defense.

## CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's motion for summary judgment (D.E. 33). The Court GRANTS IN PART and DENIES IN PART Plaintiff's motion for partial summary judgment (D.E. 34). The Court's rulings eliminate the following defenses:

- Mechanical Breakdown;
- Latent Defect;
- Inherent Vice or Quality in Property that Causes it to Damage or Destroy Itself;
- Faulty, Inadequate, or Defective Design Specifications, Repair, Renovation, Remodeling, Grading, Compaction, or Maintenance;
- Hooker's failure to perform a condition precedent; and
- Third-Party Causation.

In all other respects, Hooker's motion is DENIED.

ORDERED this 8th day of September, 2020.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE